The case for argument is Chapman v. First Index. Mr. Bok? May it please the Court, my name is Philip Bok. I'm here on behalf of both of the appellants, the plaintiff Arnold Chapman and the intervener All-American Greenfield. The appeal presents four issues. The first is this issue about the class definition. The district court held that the parties in the court are bound by the class definition in the plaintiff's complaint and that only by amending the... That doesn't seem to me what the district judge held. It seems to me the district judge concluded that there had been no request to certify a class of recipients who did consent until four years into the litigation and that that was too late. It wasn't that this was forfeited by omitting it from the complaint. The district judge said it was forfeited by not making such an argument for four years. You may disagree with that, but let's at least get correctly what the district court held. Okay, I mean the defendant, we did argue this lack of an opt-out notice. What we argued was we thought that the judge would not believe their claims of permission because they didn't actually have any evidence that any person who can be identified gave them permission to send junk faxes. What they had was arguments about implied permission and then they had employees who say, well, I got permission from people, but I don't know who they are. Look, look. Am I incorrect or was the district court incorrect in saying that there was no request to certify a class based on the defective opt-out notice until this litigation was four years old? That's true. Okay. And the defendant has filed a petition with the FCC asking for a waiver or something we argued for a stay of the appeal at the beginning of the appeal. And in there they argue that they were sued for lack of an opt-out notice on their faxes and that's why they want a waiver. So, you know, I think where the district court brought up the timing issue, she brought it up as I'm not going to let you amend the complaint to allege a class of people who received faxes that didn't have an opt-out notice. Yes. Well, look, stop talking about the complaint. One does not get classes certified by amending complaints, right? The definition of a class is proposed in a motion to certify a class, not in a complaint. And that's what didn't happen for four years. Okay. And then we did ask for a leave to amend the complaint to put in this class definition. I know you're saying we don't need to. It's irrelevant. The district judge didn't think that though. You define classes in motions to define classes, not in complaints. I agree with that. Rule 23 doesn't say that, but the court has, this court has never said that. We've known nothing for four years. So, your need, if you want us to reverse, is to show that the district court abused its discretion in thinking that four years was too long. Now, why is that an abuse of discretion? Well, she only said it was too long to file an amended complaint. We never, we wanted to file an amended complaint and then file a motion for class certification arguing that, but we weren't allowed to. And then we asked for leave to intervene a different plaintiff to do that. Could you address the question whether there was an abuse of discretion in thinking that four years was too long, no matter what caption is on the document. Okay. Is it an abuse of discretion to think that four years is too long to change the focus of the litigation to the opt-out notice? It is an abuse of discretion because the focus of the litigation was on the lack of an opt-out notice throughout the entire class certification briefing. The proposed definition wasn't based on that. But our opening brief had sections entitled, they failed to include an opt-out notice. And our reply brief had ten pages about lack of an opt-out notice. And this is all before any appellate court had said you could have a claim based only on the lack of opt-out notice. I don't think, we would argue that a reasonable person could not say that the complaint has to be amended to have a particular class definition. And that it's too late for the plaintiff to do so when the plaintiff had, when there was some confusion in the law. The defendant's arguing there's confusion in the law in their FCC petition. The plaintiff argued the lack of an opt-out notice throughout class certification. And there's no prejudice to the defendant. We don't need, there's no need for discovery. It's only a legal issue. Because the judge never considered the lack of an opt-out notice, somebody else could file a new case, argue tolling based on the fact that the defendant itself admits that this case is about lack of an opt-out notice. And because the judge never ruled on a class certified, class certification based on that issue, I guess it could be decided again. But we were trying to argue it in this case. And I recognize that that would require additional effort by the district court and maybe some additional briefing. It wouldn't be much more because we had already put our position on the issue out there. And the defendant chose to ignore it. The third issue is this idea of the Chapman's claim was picked off through an individual settlement offer. There's a settlement offer that was made. What do you think we should do in light of Campbell Ewald? Probably not decide this issue until they decide it, but I don't know. Is it possible not to decide this issue and still to decide the class certification issue? We don't want that stacked in a holding pattern. I think only if you reversed on the class certification. I think if you affirm, then the issue is, is there a case at all? And then the question is, they make this offer that while we're briefing class certification, then somehow it springs to life and should we have accepted it before? When does he have to accept it? And then, of course, it's an offer that says it's withdrawn. So the guy gets, I know as courts previously said, that's not necessarily a deciding factor, but basically the plaintiff gets no money, he gets no injunction, they're trying to make him pay $160,000 in costs, all because there's no case or controversy, because they made him an offer in an email to two of the lawyers at one of the law firms that wasn't accepted promptly enough or something. And the fourth issue is that the court should have allowed All-American to intervene. If Chapman didn't have standing to pursue the claim, if Chapman was too late, All-American painting should have been allowed to file an amended complaint, seek certification of a class that had never been decided, and maybe the judge would have denied certification in that class too, and that would have been an abusive discretion that would have been a high hurdle to meet in this court, but not even letting the plaintiff do that and attributing it to a delay in either amending the complaint or making the class definition explicit enough was error. And this court has not said in an opinion that I've found, or I haven't found any appellate court that has said that class definition doesn't have to match the one in the complaint. And I think it would be useful if judges knew that, because some judges in this court, this district, will write their own class definition. Other judges will say, I don't like that one, do it again. And I had a case where we had Judge Koukouras granted our fifth motion for class certification because we finally satisfied his requirement for the definition. And then in this case, the judge said, I don't like that definition, you can't make any other definition, and it's too late and the case is over. So unless there's other questions. Has anyone ever raised a constitutional issue about the Telephone Consumer Protection Act? When it's applied to a situation in which one business is sending advertising faxes to another business, shouldn't that be protected speech, protected commercial speech? The Supreme Court has recognized a right to freedom of commercial speech within limits. Wouldn't that make sense? You know, that's not an issue I've considered for this. I think that the Eighth Circuit addressed that issue in an earlier case. Really? I think so. And I think, you know, people argued it as to individual recipient, you know, natural persons receiving them too, and I think the difference is that it wastes their money. It takes people's money. So it's not sending junk mail or delivering junk mail or calling them on the telephone. It's sending them a fax that's using their machine and their telephone. Well, the act applies to telephone solicitations as well, of course. Not for businesses. Not as far as I'm aware. Like the do not call list doesn't apply to businesses, and people can call businesses to make telemarketing calls, but they can't call residences that are on the do not call list. They can't call residences with a machine. But I think they can do those things to businesses. They call a businessman. Yeah. Do people besides me still use faxes? Pardon me? I'm sort of archaic. Do people beside me still use faxes? Yeah, I've been asked that a few times. There are people still receiving them. There's people still sending these things. Yeah. So how many cases do you have on you? Fifty. Yeah. Okay. Saving the world's fax machines before they go to the dump. At least you don't have a hundred. Right, yeah. Okay, well, thank you for that. Okay, thank you, Mr. Bach. So, Mr. Bauer? Good morning, Your Honors. May it please the Court. I wanted to start by addressing an issue that I think causes some confusion. I'm sorry. Could you raise your voice? Yes, Your Honors. I apologize. The first issue that I want to raise is something that I believe causes some confusion. The plaintiff argues that it raised the opt-out argument in its motion for class certification, and indeed it did make arguments about the opt-out notice being defective. The problem was it limited that argument and made the argument with respect to persons that had an existing business relationship with the defendant. That argument was proper with respect to that because when it moved for class certification, the plaintiff amended the class definition to include, for the first time, persons that had an existing business relationship with the defendant. What plaintiff didn't argue in its motion for class certification is anything about claims for persons who consented to receive faxes from the defendant. The second point that I want to make is plaintiffs are correct that this case was about consent from pretty much the get-go, but it wasn't about the merits of persons' claims who consented. It was about whether or not there were persons who consented. So those are two different issues. For the four-and-a-half years that this case was pending, the case was not about what claims do persons who consented have. It was whether or not those persons existed. Plaintiff claims that we didn't present any specific evidence of consent. The district court found that we did, and in FITNOTE 2 of its brief, the plaintiff indicates that it's not challenging that decision by the district court. With respect to whether or not it was an abuse of discretion to find that plaintiff's amendment was untimely, it was more than that. Plaintiff didn't raise the issue for four-and-a-half years why this litigation was pending, all the way from the time it filed its complaint until after the motion for class certification was denied. That entire time, although there were changes in the class definition, the class always expressly excluded persons who consented to receive defendant's faxes. Now, when plaintiff filed its reply brief and raised for the first time arguments about the claims that persons who consented have, we filed a motion to strike the plaintiff's reply, those arguments, arguing that those arguments were both immaterial and irrelevant in this case because the class didn't include those people. We had a hearing on the motion to strike, and plaintiff disavowed seeking certification of a class that included persons who consented. It said, we're just trying to argue, it was Mr. Bach, we're just trying to argue certification of the class that we've already proposed. Plaintiff takes us to task for never addressing arguments about the opt-out language, but when they represent to us, at a hearing and to the district court, that they're just trying to argue a class that doesn't include those persons, it, of course, makes no sense for us to raise arguments about claims of people who are never part of the class. Counsel, I think we need to spend some time on the mootness question, which is... Sure, Your Honor. ...a question about an Article III case or controversy, and we have to reach it no matter what. Let me ask you the question in a straightforward way. The Supreme Court says that a case is moot when a court can't provide relief. Now, why can't a court provide relief to Chapman? Well, Your Honor, with respect to Chapman's individual claims, a court can't provide any relief... It can provide relief. It can order the payment. You say Chapman's maximum recovery is $3,000.02. Fine. The court can order that, right? What you say is the court shouldn't award that relief, not that the court can't. And mootness is supposed to be about whether relief is possible, not whether it's desirable or sensible. So how can a case be moot when a court can provide relief? Your Honor, I think once we make the offer, if plaintiff spurns that offer, his claims become moot. No. That's an argument that it wouldn't be sensible for the court to intervene to order relief to somebody who could have had it. Right? And that would be clear if the offer were open today. A court won't order the defendant to do something it's willing to do. But I don't see what that has to do with mootness. There may be just a misnomer in all of our cases about this. This was the subject of a debate on the Supreme Court in Genesis Healthcare, and it has obviously come back in Campbell Ewald. But I'm trying to figure out whether this was now or ever has been about mootness. Well, Your Honor, I believe that once a plaintiff has the opportunity to get all the relief that it could receive in a case, it must either accept that offer or its claims become moot. As Judge Posner said in the Grice case. Okay. Explain to me how this meets the stated Supreme Court standard for mootness, which is that it is impossible for a court to provide relief. I don't understand how it is impossible for a court to order your client to pay $3,000.02 to Chapman. It's perfectly possible. I don't understand how even in principle a claim for damages could ever be moot. It could be unwarranted. There could be a perfect defense. There could be lots of things. Think of the defense of accord and satisfaction. Suppose your client had paid $3,000.02 and had been accepted before the case began. Would that make the case moot on the date it was filed, or does it instead, in the language of Rule 12, give your client the affirmative defense of accord and satisfaction? Well, Your Honor, courts have previously said that it makes it moot. I know courts have said that. I'm asking whether that is consistent with the Supreme Court's doctrine that a case is moot if and only if it is impossible for the court to provide effective relief. I think it can be more than just if it's impossible. That is what the Supreme Court says mootness means. We're not going to disagree with the Supreme Court. We're not going to have a Seventh Circuit-specific standard. Your Honor, as far as I know, the Seventh Circuit standard is from a number of cases from this court. Why aren't you just arguing that this is a defense? And then we can ask whether an offer without it being taken is a good defense. It certainly isn't accord and satisfaction, but it just doesn't have anything to do with mootness. Your Honor, I guess I would agree with you that the mootness doctrine doesn't fit perfectly when there's an unaccepted offer. It doesn't fit at all. And if the Supreme Court doesn't say that in Campbell Ewald, I will eat my hat. The other arguments that I was going to make was just talking about the request to admin. It was four and a half years after the case began. Plaintiff was fully aware of the facts, what was in the facts itself, FAX. The time it received the facts in 2006, the discovery had been closed for a year and a half. One final question. Is your client willing to pay Chapman $3,000.02 today? I assume that my client would be willing to pay Chapman $3,000.02 today. The whole problem here comes about because this offer exploded by its own terms. Right? You might have a real defense. As I said, a court won't order the defendant to do something it's willing to do voluntarily. You might want to think about that. Yes, Your Honor. Okay. Thank you. Thank you very much. Mr. Bauer. Nothing further. Mr. Bauer, nothing further? Did you say you have nothing further? Nothing further. Okay. Well, thank you very much to both counsel. Next case for argument, reserve.